**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

**EARNEST R. JACK**                                                                    **PLAINTIFF**

**VERSUS**                                    **CIVIL ACTION NO. 1:12CV270-LG-JMR**

**COMMISSIONER OF SSA MICHAEL J. ASTRUE**            **DEFENDANT**
**Commissioner of Social Security**

**REPORT AND RECOMMENDATION**

Plaintiff, Earnest R. Jack ("Jack") filed a Complaint [1] on August 31, 2012 for judicial review of Defendant Commissioner's ("Commissioner") denial of Jack's application for disability benefits under the Social Security Act. Before the Court is Jack's [13] Memorandum Brief to Order Directing the Filing of Briefs requesting that the Court reverse the decision of the Commissioner and remand the matter to the Administrative Law Judge (ALJ) for further evaluation of Plaintiff's psychological issues. The Government has filed a Memorandum in Opposition [14] to Plaintiff's Response to Order. The sole issue presented in this matter is whether the substantial evidence supports the ALJ's decision that the Administrative Law Judge committed reversible error by failing to find Plaintiff suffers from severe psychological impairment.

On May 19, 2010, Jack filed his application for a period of disability and disability insurance benefits ("DIB") and for supplemental social security income ("SSI") alleging disability beginning March 21, 2010. [10 pp8, 11,121-128]. Plaintiff's application was denied initially on June 15, 2010 and upon reconsideration on July 29, 2010. [10,pp.11,80-83,95-96]. Valorie Stefanelli, an Administrative Law Judge ("ALJ") held a hearing on May 6, 2011 [10,pp. 45-79] in which Robert Walker, a vocation expert testified. [10,p.11]. Plaintiff was represented by his attorney, Michael

Tonder at the hearing. Id.  The ALJ issued a decision denying Plaintiff's application on May 31, 2011. [10,pp1-4]. The Appeal Council granted Plaintiff's Request for Review of the ALJ's decision. On review, the Appeal Council denied Plaintiff's applications for DIB and SSI. [10, pp.1-4]. Plaintiff has exhausted his administrative remedies and timely filed a civil action in this Court.  The matter is ripe for review under 42 U.S.C.§§405(g), 1383(c)(3).

Jack was 46 years old at the time of the ALJ's determination on May 31, 2011. [10,pp.15,50,121]. He has a twelfth grade education. [10,p.51].  He is illiterate but able to communicate in English. [10,14 Finding 8,159].  He has a past relevant work experience as a chipper, janitor and shipyard laborer. [10,pp.14.65,67-71,150,165].  He alleged an inability to work since March 21, 2010 due to back problems, pain and complications from a chest tube. [10,pp.56-57, 160].  It does not appear from the record that the issue of Plaintiff's mental condition was presented at the May 6, 2011 hearing. [10,pp. 45-79,97].

Jack was in a car accident in March of 2010 [10,pp. 163,202,244] which he alleges caused back pain, abdominal pain, left hip pain and left chest pain with difficulty breathing. [10,pp. 202,210]. The car accident caused injury to his spleen which was surgically removed. *Id.*  He also received a chest tube for a collapsed lung [10,p 202].  The trauma history and physical report from the University of Alabama Medical Center indicates Plaintiff was calm and oriented to place time and person on March 21, 2010 when he was admitted to the hospital. [10,p.216].  He was discharged from the University of Alabama Hospital on April 1, 2010 in stable condition [10,p.203]. There is no mention in this report of any mental condition. *Id.*  On discharge, he was instructed by his physician to avoid heavy lifting for six weeks. [10,p.202].  He was told he could engage in some physical activity to the extent tolerated. *Id.* He received Lortab medication for pain on discharge. *Id.*

In April and May of 2010, he went to the Stanton Road Clinic for followup care where he reported that Lortab relieved his pain. [10,pp.244-245]. While Plaintiff suffered from numerous other ailments as a result of his accident, there is no discussion of any mental condition in his examination and reports from the clinic on April 20, 2010 [10,p.249], May 4, 2010 [10,p. 248], May 25, 2010 [10,p.247].

On June 7, 2010, he filled out a form to seek disability benefits [10,pp.148-195]. The form was filled out by his preacher, Elder Tommy M Boulton. *Id*. There is a section of the form which discusses concentration, understanding, following instructions, none of which were checked by the Plaintiff as being conditions that affected him. [10,p.191]. He stated that he handled stress and changes in his routine normally. [10,p.192].

On November 11, 2010, Plaintiff sought additional treatment from Greene Area Medical Extenders for complaints of lower back pain, stomach pain, inability to sleep and depression [10,p.265]. He was diagnosed in November of 2010 for the first recorded time with post trauma stress disorder. [10,p.265]. Eva Wheeless, his nurse practitioner and his treatment provider, confirmed his symptoms of back pain, limitation of joint movement, muscle pain and muscle weakness [10,p.263]. Wheeless noted no change of sleep patterns, anxiety, difficulty in focusing, moodiness, suicidal thoughts or attempts, obsessive thoughts, compulsions, disturbing thoughts or feelings. [10,p.266]. Plaintiff's psychiatric examination found appropriate affection and judgment, good insight, proper orientation to time place and person, with recent and remote memory in tact, but he was depressed. [10,p.266]. Plaintiff's neurological examination was normal. [10,p. 266]. He was diagnosed with the following mental conditions: bipolar disorder, depressive disorder, anxiety and posttraumatic stress disorder, for which no explanation was provided, and developmental learning difficulties, which referenced a "special ed with diploma. [10,p. 266]. Plaintiff was treated

with medication and injections and was referred to "Singing River Mental Health" for treatment of depression. [10,p. at 267].

On December 6, 2010, Plaintiff returned to Greene County Medical Extenders, Inc. [10,pp.262-264].   He reported prescribed medication "is helping" (Neurotin and Baclofen). *Id*. In the "psychiatric" section of his examination, depression was noted as a symptom "with no symptoms of change in sleep pattern, anxiety, difficulty in focusing, moodiness, suicidal thoughts or attempts, obsessive thoughts, compulsions, disturbing thoughts or feelings".   [10,p 263]. Plaintiff's mood was stable ("euthymic") with appropriate affection observed. [10,p. 263].

Notes for follow up on February 16 and 28, 2011 [10,pp.255-261], show that Plaintiff reported no symptoms of fatigue, headache or loss of appetite and the results of physical examination were essential normal. [10,pp. 257, 261]. Plaintiff's mood was recorded as stable ("euthymic") with appropriate affection observed. [10,pp. 257, 261].

Plaintiff received out-patient mental health services from nurse practitioners at Singing River Mental Health in six office visits, between December 2010 and April 2011 [10,pp 269-275].  On December 14, 2010, during "intake," Plaintiff reported daily depression and anxiety.  [10,p. 269]. He talked about God showing him where he was going. *Id.*  He reported that he had been homeless in Atlanta and that five years prior to that visit he was traumatized when he found out his wife had been already married. *Id.*  He reported he heard voices calling his name and telling him things to do, places to go, etc. [10,p.271].  He did not sleep because of the voices. *Id.*

During a follow up visits on December 29, 2010 and January 12, 2011, Plaintiff explained he had not yet filled his prescription for Celexa, but that other prescribed medications helped him sleep and he denied auditory hallucinations. [10 ,pp.275- 276]. In February 2011, Plaintiff stated he was less depressed and was sleeping better. [10,p. 277]. In March, he reported running out of

Seroquel and a recurrence of auditory hallucination, but also stated that he was doing some yard work to earn money. [10,p. 278].

On May 3, 2011, Plaintiff returned to Greene Area Medical for follow up with NP Wheeless. [10,pp. 279-284]. Psychiatric examination results indicated Plaintiff had "childlike judgment," fair insight, proper orientation to time, place and person, as well as recent and remote memory intact, mood stable ("euthymic") and appropriate affection observed. [10,p. 280]. Plaintiff testified and reported that he could no longer work due to an inability to read, inability stand for long periods and because of complications from a chest tube and back problems. [10,pp. 55, 56, 160]. Plaintiff never reported or claimed he had a mental impairment that limited him in any way. [10,pp 50-69, 160]. He indicated he was a preacher and stated others read for him [10,p. 55]. He stated that he took daily walks [10,pp. 59, 63, 183, 186], performed light household chores for his mother [10,pp. 61, 185], that he retained the ability to lift objects weighing between 15 and 40 pounds [10,p. 64] and that his pain medication was effective. [10,p. 57].

The ALJ applied the five step sequential evaluation when assessing Plaintiff's disability claims [10,p.-5]. She found at step two that Plaintiff had severe impairments of back pain, status post splenectomy and borderline intellectual functioning [10,p. 10-11], but at step three found no impairment or combination of impairments met or medically equaled one of the listed impairments in 20 C. F.R. Part 404, subpt. P, app. 1 [10,p. 16 Finding 4].

The Court finds the ALJ considered all of the record evidence and testimony and determined Plaintiff had the residual functional (RFC) capacity to perform the full range of light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b) before considering steps 4 and 5 [10,p. 12, Finding 5]. At step four of the sequential evaluation, the ALJ found that Plaintiff was unable to perform his past work [10,p. 14, Finding 6]. At step 5, the final step in the sequential evaluation, the ALJ used the

Medical-Vocational Guidelines ("the Grids") to determine whether Plaintiff was able to perform other work. [10,pp. 14-15]. *See* 20 C.F.R. Part 404, subpt. P, app. 2, § 202.16; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). The ALJ considered Plaintiff's RFC, age, education, and work experience, and determined that a finding of "not disabled" was directed by Grid Rule 20.16 [10,p.14. Finding 10, p. 15, Finding 11].

The Court's review of the Commissioner's final decision is limited to an inquiry into whether the Commissioner applied the proper legal standards to evaluate the evidence and whether substantial evidence in the record supports the final decision. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012); *Newton* v. *Apfel,209* F.3d 448,452 (5th Cir. 2000). "Substantial evidence is 'more than a mere scintilla. It means that such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'." *Audler v. Astrue*, 501 F.3d 446, 447 (5th Cir. 2007) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The court "may not re-weigh the evidence or substitute [its] judgment for that of the Commissioner, even if the evidence weighs against the Commissioner's decision." *Jack v. Astrue*, 426 Fed.Appx. 243, 244-45 (5th Cir. 2011). Conflicts in the evidence are for the Commissioner, not the courts, to resolve. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).

Plaintiff bears the ultimate burden of proving he is disabled. *See* 42 U.S.C. §§ 423(d)(5)(A), 1382c(a)(3)(H)(I); 20 C.F.R. §§ 404.1512(a), 416.912(a) (2012). Social Security regulations provide for a five-step sequential evaluation process to determine. 20 C.F.R. §§ 404.1520, 416.920. Plaintiff bears the burden of proof in the first four steps. *Perez,* 415 F.3d at 461.

First, a claimant must establish he is not engaged in substantial gainful activity, as defined in the regulations. Second, the claimant must establish an impairment or combination of impairments

that is severe. Third, if the claimant establishes impairment or combination of impairments meets or equals a listed impairment, the claimant will be found disabled. If not, the ALJ will determine if the claimant can engage in past relevant work. If the claimant can engage in past relevant work, the claimant is not disabled. If the claimant cannot do past relevant work, the ALJ must determine if there is any other work the claimant can do at step five. If the claimant cannot engage in any other work, then he is considered disabled. 20 C.F.R. §§ 404.1520, 416.920.

At step two of the sequential evaluation, Plaintiff bears the burden of providing evidence that he has a severe impairment. 20 C.F.R. §§ 404.1512(a), 416.912(a); *Bowen v. Yuckert*, 482 U.S.137, 146 (1987); *Giles v. Astrue*, 433 Fed.Appx. 241, 246 (5th Cir. 2011). A severe impairment is an impairment that significantly limits a claimant's physical or mental abilities to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985); *Brunson v. Astrue*, 387 Fed.Appx. 459, 461 (5th Cir. 2010). Furthermore, an impairment is "not severe if it is a slight abnormality or combination of slight abnormalities that has no more than a minimal effect on the claimant's ability to do basic work activities." *Brunson*, 387 Fed.Appx at 461 (citation omitted); *see* 20 C.F.R. §§ 404.1521(a), 416.921(a). An impairment must be severe for a continuous period of at least twelve months. *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a); *Barnhart v. Walton*, 535 U.S. 212, 217 (2002).

Based on the evidence presented, the ALJ determined that Plaintiff had multiple severe impairments, including back pain, status post splenectomy and borderline intellectual functioning [10,pp. 10-11]. *See* 20 C.F.R. §§ 404.1520(c)-(d), 416.920(c)-(d); *Stone*, 752 F.2d at 1101. Even though Plaintiff did not allege disability or functional limitation due to a mental impairment, the ALJ considered Plaintiff's medical records and determined that Plaintiff had a severe impairment of borderline intellectual functioning. [10,pp. 10-12]. Furthermore, the ALJ found in Plaintiff's favor

at step two by finding he had multiple severe impairments and proceeded with the sequential evaluation process. [10,pp. 10-15]. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii)-(v), 416.920(a)(4)(iii)-(v). An ALJ's failure to make a severity finding at step two is not a basis for remand where the ALJ proceeded through the later steps of the sequential evaluation. *See Jones v. Bowen*, 829 F.2d 524, 527 n.1 (5th Cir. 1987); *Adams v. Bowen*, 833 F.2d 509, 512 (5th Cir. 1987).

The ALJ also specifically considered statements in the medical records related to depression and psychosis and found Plaintiff's depression was not a severe impairment [10,pp 10-11]. Plaintiff alleged disability due to back pain and complications from a chest tube [10,p. 160]; he cited "pain" as the only limitation and did not allege disability or limitation due to depression, psychosis or any other mental impairment. [10,pp.149, 160, 184, 193-194]. Moreover, Plaintiff was represented by counsel and testified at the administrative hearing. [10,pp 45-82]. Neither Plaintiff nor his counsel alleged or suggested Plaintiff experienced any limitation or difficulty related to depression or any other mental impairment. [10,pp. 45-82]. Thus, the Court finds that the ALJ provided good reasons for her decision in her explanation regarding the finding that depression was not a severe impairment. In this regard, the ALJ noted that Plaintiff failed to identify any example of grossly disorganized behavior, inappropriate affect, worsening symptoms, or other limitations resulting from depression in the areas noted in 20 C.F.R. §§ 404.1520a, 416.920. She also found that medical records showed Plaintiff did not seek any mental health treatment until December 2010, less than one year before the ALJ issued her decision in this case [10,pp 11, 265-266]. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.927(a)(4)(ii). Impairment must be severe for a continuous period of at least twelve months. *Walton*, 535 U.S. at 217. Thus, the Court finds that Plaintiff did not meet his burden of showing these conditions were severe or established greater functional limitations. Plaintiff's alleged mental condition did not meet the duration requirements of step two because it was not

severe for at least twelve consecutive months.

Although the evidence indicates Plaintiff was occasionally diagnosed with a mental impairment such as anxiety or depression [10,pp. 266, 268], the record does not indicate that the condition caused any work related limitations. *See Bordelon v. Astrue*, 281 Fed. Appx. 418, 422 (5th Cir. 2008); *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983). The medical records confirm that he responded to medication, which remedied his condition. [10,pp. 11, 267, 273-275]. In addition, he was observed to be alert and oriented [10,pp. 260, 263, 277], with no limits ever placed on his ability to function. The mere presence of impairments is not disabling per se; plaintiff must show that he was so functionally impaired by his impairments that he was precluded from engaging in any substantial gainful activity. *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983).

Finally, Plaintiff never asserted that his mental condition in anyway affected his ability to function. The Court finds that the ALJ's decision that Plaintiff's depression was not a severe impairment is supported by substantial evidence. In his brief [13], Plaintiff claims the ALJ erred in "failing to find [Plaintiff's] psychological impairments were severe impairments". Plaintiff cites no medical evidence of limitations due to mental impairment in support of his argument. Plaintiff supports his assertions with his statements related to depression, change in sleep patterns, audio or visual hallucination, psychosis and childlike judgment. [13,pp. 4-5, citing Doc. 10 at 263-264, 268, 270 and 277]. The Court finds that while the medical records contain his cited statements, the record as a whole does not support Plaintiff's conclusion that these statements prove that he has any severe mental impairments. *See* 20 C.F.R. §§ 404.1520(c), 416.920 (c). If a claimant's symptoms were reasonably well-controlled with medication, then the symptom is not disabling, *Palomo v. Barnhart*, 154 Fed.Appx. 426, 430 (5th Cir. 2005). The Court, further finds Plaintiff failed to show these diagnosed conditions significantly impacted his ability to work. Thus, the Court finally finds that

substantial evidence supports the ALJ's severe impairment and RFC determinations.

Plaintiff cites *Stone v Heckler*, 752 F.2d 1099 (5th Cir. 1985) as providing a standard for assessing whether an impairment is severe. [13,p. 4]. The claimant in Stone was found "not disabled" at step two of the sequential evaluation process and there was no further evaluation at any advanced step. Id. *Stone* applies to cases in which an ALJ makes "a decisive administrative determination . . . against disability at step two on the grounds of non-severity." *See Loza v. Apfel*, 219 F.3d 378, 390-391 (5th Cir. 2000). Proceedings which past step two in the sequential evaluation are distinguishable from *Stone* because they do "not turn on whether or not [the claimant's] impairment was severe . . . ." *Chaparro v. Bowen*, 815 F.2d 1008, 1011 (5th Cir. 1987); *see also Lopez v. Bowen*, 806 F.2d 632, 634 (5th Cir. 1986) (distinguishing *Stone*). An ALJ does not err when an impairment is found not to be severe but continues through the sequential evaluation. *See Jones*, 829 F.2d at 527 n.1; *Adams*, 833 F.2d at 512; *Chaparro*, 815 F.2d at 1011; *see also Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). The Court finds this case is not subject to a claim of error and does not warrant reversal or remand as the ALJ found Plaintiff's depression was not a severe impairment at step two but recognized that Plaintiff had multiple other severe impairments. Thus, due to the other severe impairments, the ALJ continued the analysis through the 5-step sequential evaluation process. [10,pp. 11-15].

The ALJ considered the same treatment records and applied the same standard from Stone for "severe impairment" that Plaintiff cites. [13,pp 4-5]. In doing so, the ALJ considered the overall evidence, including the fact that Plaintiff never alleged any mental impairment in his disability application and hearing testimony, as well as the medical records. Based on the overall evidence, the Court finds that the ALJ properly found Plaintiff's depression was not a severe impairment. [10,pp 10-11].

In conclusion, the Court finds that the ALJ used the proper legal standards and that her opinion is supported by substantial evidence. Based on the foregoing, the Court recommends that the Plaintiff's appeal be dismissed with prejudice; and, that Final Judgement in favor of the Commissioner be entered.

Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Court. A party filing objections must specifically identify those findings, conclusions and recommendations to which objections are being made; the District Court need not consider frivolous, conclusive or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on the District Judge and on all other parties. A party's failure to file such objections to the proposed findings, conclusions and recommendation contained in this report shall bar that party from a de novo determination by the District Court. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the Report and Recommendation that have been accepted by the district court and for which there is no written objection. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

SO ORDERED, this the 13th day of December, 2013.

                                                    */s/ John M. Roper, Sr.*
                                        CHIEF UNITED STATES MAGISTRATE JUDGE